## THE PRINCESS SOPHIA.

### Petition of CANADIAN PAC. RY. CO.

District Court, W. D. Washington, N. D.
December 19, 1929.

No. 4553.

For former opinion, see 35 F.(2d) 736.

Bogle, Bogle & Gates, of Seattle, Wash., for petitioner.

Wm. Martin and Grosscup, Morrow & Wallace, all of Seattle, Wash., for claimants.

NETERER, District Judge. The claimants petition a rehearing on the ground that the court erred in limiting its jurisdiction in this proceeding, and in that objection could be made to foreign administrator on the hearing and without plea in abatement, and that an answer to the merits on the general issue did not waive the disability to sue, and also that it was error to hold that on failure to file a claim for two years, liability ceased, and also in its conclusion upon the facts and in the assessment of damages; also, petition that local administrators be substituted as plaintiffs for foreign administrators; that the court erred in not allowing interest from date of death.

The claims filed are all in legal effect the same. They allege: That claimant in response to a monition and citation issued for the presentation of claims, does now, as a basis for damages against the Canadian Pacific Railway Company and the steamship Princess Sophia, allege that claimant ——— is a duly appointed and qualified and acting administrator of the estate of the above-named decedent; corporate relation of the railway company; operation of the steamship, a common carrier of passengers for hire; that deceased purchased a ticket and was a regular passenger on the steamship on the fatal day; gives the leaving time of the steamship at port in Alaska, and the date and time when it sank in the waters of Lynn Canal, and the death of the deceased; and on information and belief it is alleged that the sinking of the steamship and the death of the deceased was caused through the negligence and carelessness of the petitioner, etc. Then follows that loss of life of the deceased occurred within the territory and waters of Alaska "and the rights of this claimant are therefore covered by the laws of said territory"; that at the time of the wreck of the Princess Sophia, "Sec. 1185, Chapter 37, of the Code of Civil Procedure, Compiled Laws of Alaska, * * * was a valid law * * * of Alaska." A copy of section 1185 is set out. And it then alleges age of the deceased, condition of health, life expectancy, occupation, annual earnings, and prays for judgment in the sum of $10,000.

Answer was filed denying on information and belief some of the allegations, denying others, admitting the sinking of the ship, etc.

Upon the taking of testimony before the Commissioner, when evidence of the appointment of a foreign administrator was offered, objection was duly made as to his right to sue, improper party, etc. This objection has been urged throughout the entire proceeding.

It is contended at bar that the foreign

administrator had a right to sue as the personal representative of deceased, and, in any event, the local administrators have a right to be substituted.

It is also contended that filing the petition for limitation and issuance of monition brought all parties into court, and issuance of injunction extended all rights and remedies to the end of the litigation.

Surrendering the ship and pending freight pursuant to sections 4283–4285, Rev. St. (46 USCA §§ 183–185), and issuing a monition gave the court jurisdiction of the property or fund, but not of the claimants. The limitation is fixed by the statute. The ship, etc., or fund, is held by the court until the rights of the parties who appear and make claim are determined. The limitation statute opens the way where claimants and owner may be brought into concourse (Hartford Acc. & Ind. Co. v. Sou. Pac., 273 U. S. 207, 47 S. Ct. 357, 71 L. Ed. 612), but the court has not jurisdiction of the claimant until he appears and presents his claim. Equity in admiralty may not be administered until claimant appears and states the facts substantially as in a libel showing prima facie right of recovery. In re Davidson S.S. Co. (D. C.) 133 F. 411. See, also, The Pere Marquette 18 (D. C.) 203 F. 127. Hartford Acc. & Ind. Co. v. Sou. Pac., supra, is not to the contrary. The injunction issued merely declared a statutory provision. All other jurisdictions were closed by the statute. "The very nature of the proceeding and the monition has the effect of a statutory injunction. Indeed, that is the express declaration of the statute." Metropolitan Redwood Lumber Co. v. Doe (The San Pedro) 223 U. S. 365, at page 372, 32 S. Ct. 275, 276, 56 L. Ed. 473, Ann. Cas. 1913D, 1221. The claimants could not proceed except in this court by presentation of their claims, but this court was open to them at all times. The limitation and the injunction are provided by the same act. The liability and the remedy are creatures of the same statute (Civil Code of Alaska, supra), and all became a part of and entered into the relation of all parties, and the failure to present the claim within the fixed period (two years) ended the liability. See The Harrisburg, 119 U. S. 199, 7 S. Ct. 140, 30 L. Ed. 358.

On a limited statutory right, liability ends at expiration of the fixed period, while a statute of limitation merely withdraws the remedy, but the right remains. Cases cited by the claimants upon the operation of the statute of limitations are not in point.

It is said that form and procedure is subordinated to substantial justice, administering which claimants pray. Form is said to be the order or method of the legal proceeding. Procedure may be said to be the rules which bring parties into court, and testimony to determine the right, and conclusion upon the evidence admitted. If the pleading is in substance sufficient, lack of form is not fatal, but if the pleading is in good form and barren of substance, it must fail. " 'The difference between matter of form and matter of substance, in general, under the statute of Elizabeth, as laid down by Lord Hobak, is that that without which the right doth sufficiently appear to the court is form, but that any defect by reason whereof the right appears not, is a defect in substance.' * * * 'If the matter pleaded be in itself insufficient, without reference to the manner of pleading it, the defect is substantial, but, if the only fault is in the form of alleging it, the defect is but formal.' " Quoted in Pierson v. Springfield Fire and Marine Ins. Co., 7 Houst. (Del.) 307, 31 A. 966, 968.

The objection to the foreign administrator could not be made by plea in abatement, as a foreign appointment was not shown in the claim presented, and when first disclosed, on the taking of testimony, objection was made. In Noonan v. Bradley, 76 U. S. (9 Wall.) 394, 400, 19 L. Ed. 757, Justice Field on the right of an administrator appointed in one state, suing in another where laws of the state do not permit it, said: "And upon this question the law is well settled. All the cases on the subject are in one way. * * * All hold that in the absence of such a statute no suit can be maintained by an administrator in his official capacity, except within the limits of the State from which he derives his authority. * * *" And in the same case the court held the objection can be made on a plea to the general issue where the foreign relation is not apparent on the face of the claim. See, also, Dixon's Executors v. Ramsey's Executors, 7 U. S. (3 Cranch) 319, 2 L. Ed. 453; L. & N. R. R. Co. v. Brantley, 96 Ky. 297, 28 S. W. 477, 49 Am. St. Rep. 291; McMicken v. United States, 97 U. S. 204, 24 L. Ed. 947.

The Circuit Court of Appeals, Second Circuit, in Globe & Rutgers Fire Ins. Co. v. Hines (C. C. A.) 273 F. 774, held that the court's jurisdiction depends upon the party to the record, not to the beneficial party. In Ward v. Petrie, 157 N. Y. 301, 51 N. E. 1002, at page 1005, 68 Am. St. Rep. 790, the court says: "The plaintiff claims that, as the defendants did not raise the question of his capacity to sue by demurrer or answer,

* * * they thereby waived the right to claim that the receiver cannot maintain this action. There is a difference between capacity to sue, which is the right to come into court, and a cause of action, which is the right to relief in court. * * * The plaintiff was duly appointed receiver, and has a legal capacity to sue as such, and hence could bring the defendants into court by the service of a summons upon them, even if he had no cause of action against them. On the other hand, an infant has no capacity to sue, and hence could not lawfully cause the defendants to be brought into court, even if he had a good cause of action against them. Incapacity to sue is not the same as insufficiency of facts to sue upon. * * * "

Knappen, Circuit Judge, for the appellate court, in Sterrett v. Second National Bank, 246 F. 753, where an action was brought by a receiver appointed in Alabama in the district court in Ohio, no ancillary receivership being had in Ohio, at page 758, said: "It follows that in the present state of the record the defendant is entitled to a dismissal of the suit, notwithstanding its apparent failure to call to the attention of the court below the proposition on which our decision is based; for, if plaintiff had no title and no right of action in the court below, that court was without power to render decree in his favor. See Gt. Western Mining Co. v. Harris, supra, at pages 577, 578 of 198 U. S. * * * A defense that plaintiff has no title to the asserted right of action is always open." Compare Sims v. City of Moline & Kate Anderson, 222 Ill. App. 530. In that case the father brought an action to recover a loss of service of his minor son until majority, costs of burial, etc., and the statute of Illinois provided that the action shall be brought in the name of the personal representative of the deceased person and the amount recovered shall be for the exclusive benefit of next of kin, etc., and the court, in affirming dismissal, said: "The declaration in each of its counts sets up the facts which are undisputed as far as appellant is concerned. These facts showed that the appellant had no cause of action against the appellees. It also appeared from these facts that the declaration could not be amended so as to state a cause of action without making new parties plaintiff. Under these conditions the court properly dismissed the suit upon motion."

A parallel case is Lefebure v. Baker, 69 Mont. 193, 220 P. 1111, 1113, in which, among other things, the court said: "There is a distinct difference between capacity to sue, which is the right to appear in court, and a cause of action, which is the right to relief in court."

It is obvious that lack of substance is the vital element and form and procedure bear no relation.

An analysis of the cases cited by the claimants would unduly extend this decision. Some of the cases are not out of harmony with the rule stated or the cases herein cited, as to the right of a foreign administrator to sue in this state, and there is none which holds that a liability created by statute does not cease at the expiration of the limit given it by statute.

The plea and motion for substitution was filed in this court on the 18th of November, 1929, and alleges local ancillary letters of administration were issued in October, 1929, and request permission to be substituted and that they relate back and render valid all acts within the scope of the rightful executor or administrator's authority.

■■ This proceeding was instituted February 28, 1919, a nunc pro tunc order, if entered, would seek to revive statutory liability, which expired more than eight years ago, and that the acts of foreign administrators be adjudicated valid by the nunc pro tunc order of substitution. In support of this motion are cited Leahy v. Haworth (C. C. A.) 141 F. 850, 4 L. R. A. (N. S.) 657; The Saginaw and The Hamilton (D. C.) 139 F. 906; Dodge v. Town of North Hudson (C. C.) 188 F. 489; McDonald v. State of Nebraska (C. C. A.) 101 F. 171; Hodges v. Kimball (C. C. A.) 91 F. 845. These cases are not persuasive. In view of the provision of the statute of Washington, and the holding of the Supreme Court with relation to the statute, and after ending of the statutory liability by failure to present the claims within the period, the court would assume a prerogative which it does not possess. Nunc pro tunc—now for then—an entry now for something previously done. A decree or order nunc pro tunc presupposes a decree or order, but not entered through inadvertence of the court. Cuebas y Arredondo v. Cuebas y Arredondo, 223 U. S. 376, at 390, 32 S. Ct. 277, 56 L. Ed. 476. In Gray v. Brignardello, 68 U. S. (1 Wall.) 627, at page 636, 17 L. Ed. 692, the court said: "A nunc pro tunc order is always admissible, when the delay has arisen from the act of the court. * * * But that is not this case. There is nothing to show that the report of the commissioner was approved prior to the sale; no evidence that any decree was entered, or any authority even to make one, on the day

stated, nor in fact that the court was in session on that day. By no rule of law can a decree, which was clearly an afterthought and made subsequent to the sale, bolster up the authority to make it."

In The Bayonne, 159 U. S. 687, at page 692, 16 S. Ct. 185, 187, 40 L. Ed. 305, Chief Justice Fuller said: "The district court of the United States for the Southern district of New York has monthly terms. * * * The decree here was entered December 21, and the appeal allowed December 31, 1892. On the 17th of the following January, during a new term of the court, the assignment of errors was directed to be filed nunc pro tunc as of December 31, 1892. If that assignment could be treated as a certificate, it came too late, and, as there is nothing in the record prior to the expiration of the December term to indicate any attempt or intention to file a certificate during that term, and there was no omission to enter anything which had actually been done at that term, the case did not come within the rule that permits an amendment of the record nunc pro tunc. Hickman v. Ft. Scott, 141 U. S. 415, 418, 12 S. Ct. 9 [35 L. Ed. 775]; Bank v. Eldred, 143 U. S. 293, 299, 12 S. Ct. 450 [36 L. Ed. 162]. * * *" And the court dismissed the appeal for want of jurisdiction.

In Smith v. New York Central Railroad Co., 183 App. Div. 478, 171 N. Y. S. 64, 66, an action to recover damages for death of Smith, husband, caused by negligence February 23, 1917, action commenced February 26, following. The wife alleged appointment as administratrix. This was denied. The proof showed that petition for letters was filed February 26, but letters not issued until March 6. On April 24, upon motion, the surrogate entered an order amending the letters nunc pro tunc as of February 26. The court, in a voluminous opinion, among other things said: "The plaintiff was not the administratrix when the action was commenced, and no subsequent order can change that fact. As was said in Guarantee Trust Co. v. P. R. & N. E. R. R. Co., 160 N. Y. 1, 7, 54 N. E. 575: 'While a court may record an existing fact nunc pro tunc, it cannot record a fact as of a prior date when it did not then exist.'" The motion for substitution cannot be sustained.

The holding of this court that interest will not be allowed upon unliquidated demands prior to the time when such demands are merged in judgment, in United States v. Skinner & Eddy Corp'n (D. C.) 28 F.(2d) 373, was approved by the Circuit Court of Appeals in a decision filed November 4, 1929,

35 F.(2d) 889. Denying claim for interest was, and is, right.

Claimants except to the court's definition of loss and right to recover. The court said the value of the right should be measured by the earning capacity, thriftiness, and probable length of life of the deceased, to be made as nearly as may be to the financial returns which would reasonably be expected, what investments or savings have been effected during the lifetime, the reasonable expectancy or certainty of continued savings, and, giving consideration to his age, health, habits, disposition, and capacity to labor and to save, what would he likely have provided for an estate had he lived the life expectancy, and that the court could not in good conscience say that a party (a bachelor) 35, 40, 50, or 60 years of age, or any age, who has not shown some result of savings, saving habit, and position of expectancy, in all reasonable probability would leave an estate of present worth at the end of life expectancy. Health, earning capacity, and employment, contributions to charity or "living well," being a "good fellow," without some evidence of accumulation and saving habit, does not create a presumption of itself to support such finding.

This is the correct statement of the rule. The conclusion of the court upon the evidence as made is right.

The motion for rehearing will be denied.